IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Case No. 3:23CR61 (RCY) |
| | ) |
| DAVONTE J. COE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Davonte J. Coe's Motion to Suppress (ECF No. 18). On September 11, 2023, the Court conducted a hearing on the Motion to Suppress and denied the motion from the bench at the conclusion of the hearing. This Memorandum Opinion sets forth the Court's reasoning for its decision.

**I. FACTUAL BACKGROUND**

At approximately 10:26 P.M. on March 9, 2023, Officer Walker of the Richmond City Police Department parked his patrol vehicle behind the 701 Express convenience store located at 701 Richmond Highway. Officer Walker was patrolling alone, and he arrived at the 701 Express to conduct a "merchant check."[1] Concurrently, Defendant Davonte J. Coe ("Mr. Coe" or "the Defendant") was seated in his parked vehicle adjacent to the entrance of 701 Express. Officer Walker exited his vehicle and walked around the side of the building to enter the convenience store. In doing so, Officer Walker approached Mr. Coe's vehicle and observed Mr. Coe in the driver's seat holding what Officer Walker believed to be narcotics. Officer Walker also noticed an individual sitting in the passenger seat of the car. Officer Walker then shined his flashlight

---

[1] Per Officer Walker's testimony, a merchant check involves visiting a business and ensuring that there is a safe environment for everyone present.

through the driver's side window, drew his firearm, and opened the door. In response to a command, Mr. Coe began to exit the car. Officer Walker grabbed Mr. Coe and used his left forearm to prevent Mr. Coe from fleeing by pinning him to the car. Officer Walker then holstered his firearm and withdrew his taser.

Mr. Coe then began to struggle with Officer Walker, and threw several small plastic bags in front of the car. The bags were retrieved by two unidentified individuals standing in front of the vehicle who promptly left the area. During this struggle, Office Walker observed a firearm in the back of Mr. Coe's pants, with the grip in view above Mr. Coe's waistline. The altercation also caused Officer Walker's body camera to fall onto the ground, partially obscuring the events to follow. Mr. Coe then briefly broke free from Officer Walker, at which point Officer Walker deployed his taser. Mr. Coe fell to the ground, and Officer Walker removed the firearm from Mr. Coe's waistband and moved it away from Mr. Coe. Officer Walker then deployed a second, arcing charge through the taser a few seconds later. All the while, Mr. Coe repeatedly yelled, "I'm standing still."

## II. PROCEDURAL HISTORY

On May 17, 2023, the Defendant was charged in a one-count Indictment with Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.) Specifically, the Indictment charged the Defendant with having possessed one firearm, a Springfield Model XDS pistol, with seven rounds of .45 caliber ammunition. (*Id.*) On July 26, 2023, the Defendant filed a Motion to Suppress (ECF No. 18) that sought to suppress evidence of the pistol due to the allegedly unreasonable manner in which it was seized. (ECF No. 18.) On August 8, 2023, the Government filed a Motion for Extension of Time to File a Response as to Defendant's Motion to Suppress. (ECF No. 24). The Government's Motion was granted (ECF

No. 25). Subsequently, the Government timely filed its Response in Opposition to Defendant's Motion to Suppress. (ECF No. 27.) After all briefings were submitted, the Court set the matter for a hearing, which took place on September 11, 2023.

### III.  LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The exclusionary rule—a "prudential" doctrine crafted by the courts—serves to sometimes exclude evidence obtained in violation of the Fourth Amendment's commands. *See Davis v. United States*, 564 U.S. 229, 236 (2011).

On a motion to suppress, the burden is on the party who seeks to suppress the evidence. *United States v. Bello-Murillo*, 62 F. Supp. 3d 488, 491–92 (E.D. Va. 2014); *United States v. Seerden*, 264 F. Supp. 3d 703, 708 (E.D. Va. 2017). Once a defendant has established a basis for the motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *Bello-Murillo*, 62 F. Supp. 3d at 492; *Seerden*, 264 F. Supp. 3d at 708. "In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law." *Bello-Murillo*, 62 F. Supp. 3d at 492 (citing *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir.2005)).

### IV.  DISCUSSION

In the Motion to Suppress, the Defendant's primary contention is that the firearm should be suppressed because it is the result of an unreasonable seizure in violation of the Fourth Amendment. Specifically, the Defendant argues that Officer Walker's conduct "showed an unreasonable and excessive use of force." (Def.'s Mot. 6.) In response, the Government makes three contentions: (1) suppression is not the appropriate remedy for an excessive force claim; (2)

even assuming the exclusionary rule could apply in this context, a causal connection between the degree of force used by the officer and recovery of the firearm would be required and is lacking; and (3) the degree of force used by Officer Walker was reasonable in light of the circumstances. (Gov't's Resp. 3.)  The Court need not reach the first or third contention, as there is an insufficient connection between the alleged constitutional violation and the discovery of the evidence in question, rendering the exclusionary rule inapplicable.

A. **The Exclusionary Rule Applies When There is a Sufficient Causal Connection Between the Constitutional Violation and the Evidence at Issue**

The exclusionary rule is a prudential doctrine that, where applicable, operates to exclude evidence obtained in violation of the Fourth Amendment.  *Davis v. United States*, 564 U.S. 229, 236 (2011).  The sole purpose of the exclusionary rule is to deter future Fourth Amendment violations.  *Id.* at 236–37.  Thus, in determining whether the exclusionary rule is applicable, courts must balance the deterrent value of excluding the evidence in question against the "substantial social costs" generated by the rule.  *Id.* at 237.  Courts must do this balancing in light of the admonition that "suppression of evidence . . . has always been [the] last resort."  *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).  In that same vein, "exclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence."  *Id.* at 592.  Instead, "but-for causality is only a necessary, not a sufficient, condition for suppression."  *Id.*

Finally, even where a direct causal connection exists between the constitutional violation and the evidence seized, the exclusionary rule does not apply if "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."  *Id.*  Courts must therefore inquire as to the interest protected by the constitutional guarantee in question.  Once identified, courts must then determine whether suppressing the evidence obtained would actually serve the underlying constitutional protection.

An example of the above principles in action comes from *Hudson* itself, wherein the Supreme Court declined to extend the exclusionary rule to suppress evidence obtained following a knock-and-announce violation. *Id.* at 602. The Court first noted that the knock-and-announce rule operates to "assure[] the opportunity to collect oneself before answering the door." *Id.* at 594. Conversely, the Court noted that the knock-and-announce rule has "never protected . . . one's interest in preventing the government from seeking or taking evidence described in a warrant." *Id.* Because the violation in question—failing to knock and announce—was therefore unrelated to the defendant's constitutionally protected interests, the Court held the exclusionary rule inapplicable. *Id.* The Court went on to discuss several other cases, all generally standing for the proposition that, to trigger the exclusionary rule, a sufficient relationship must exist between the alleged constitutional violation and the discovery of the evidence in question. *See id.* at 599–602 (citing *Segura v. United States*, 468 U.S. 796, 799–801, 804–05 (1984) (holding that the exclusionary rule was inapplicable where the evidence obtained was not "derived from" or "related in any way" to the constitutional violation); *New York v. Harris*, 495 U.S. 14, 15–16 (1990) (same); *United States v. Ramirez*, 523 U.S. 65, 71–72 (1998) (same)). In short, for evidence to properly be suppressed pursuant to the exclusionary rule, the evidence in question must actually result from the alleged constitutional violation, rather than from permissible law enforcement conduct. *Hudson*, 547 U.S. at 601–02.

Applying the above framework to this case, the first step is identifying the interest(s) protected by the relevant constitutional guarantee. *See id.* at 592. Here, the Defendant has challenged not the level of suspicion, but just the level of force utilized by Officer Walker—i.e., the *manner* in which he was seized. (Def.'s Mot. 6–7.) More specifically, Defendant has alleged that Officer Walker employed excessive force while seizing him, rendering the seizure

unreasonable under the Fourth Amendment. (*Id.*) The interest in question, then, is the Fourth Amendment right to be seized in a reasonable manner. *See, e.g., Graham v. Connor*, 490 U.S. 386, 394–96 (noting that where excessive force claims arise in the context of an arrest or investigatory stop, they are properly characterized as Fourth Amendment protections because "the Fourth Amendment . . . guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."). In turn, determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396. This balancing involves consideration of such things as the severity of the crime at issue, whether the suspect poses an immediate threat to officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*; *see also Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985).

Setting aside the reasonableness inquiry for now, the second portion of the exclusionary rule analysis turns to consider (1) whether the evidence obtained derives from or is related to the alleged constitutional violation, and (2) whether suppressing the evidence obtained would actually serve the underlying constitutional protection. *See Hudson*, 547 U.S. at 592; *Segura*, 468 U.S. at 796, 799-801, 804–05. A review of the present facts reveals that both of these questions are answered in the negative.

**B. There Is No Causal Connection Between the Force Used and the Recovery of the Firearm in Question**

Here, Officer Walker, patrolling alone, approached the Defendant's vehicle and observed small bags in the Defendant's possession that appeared to be narcotics. Officer Walker also observed another passenger in the vehicle, as well as several other individuals in the general vicinity. While the characterizations of certain facts are disputed, what happened next may be

summarized as follows: Officer Walker drew his service weapon, opened the door, and removed the Defendant from the car. Next, Officer Walker used his forearm to prevent the Defendant from attempting to flee. Officer Walker holstered his service weapon and drew his taser. The Defendant then began struggling and threw a few of the small bags in front of the car. In this struggle, Officer Walker noticed the firearm in the Defendant's waistband. Apparently attempting to regain control of the situation, Officer Walker discharged his taser, bringing Defendant to the ground. Officer Walker removed the firearm from the Defendant's waistband and placed it out of reach. Officer Walker then deployed a second, arcing charge through the taser.

As the facts indicate, the evidence in question—the firearm—is not derived from nor related to Officer Walker's alleged use of excessive force. Nothing about the force used by Officer Walker *caused* the firearm to be discovered. That is, regardless of how Officer Walker carried out this concededly permissible stop, he would have discovered the firearm, whether during the course of a *Terry* frisk or a standard search incident to arrest. While there is no binding, on-point precedent, relevant precedent does point in this direction.

For instance, *Segura* concerned evidence obtained pursuant to a lawful search, but following an unlawful entry. *Segura*, 478 U.S. at 804–05, 815. There, the Court noted that because the information found was not "derived from or related in any way" to the initial unlawful entry, it would not be excluded. *Id.* at 814. The same is true here—Officer Walker noticing (and ultimately seizing) the firearm in question had nothing to do with the manner of the seizure, and everything to do with the fact that the seizure occurred in the first place. And as noted above, the level of suspicion (i.e., the lawfulness of the investigation itself) has not been challenged. Likewise, *Harris* concerned an alleged Fourth Amendment violation that occurred when the defendant was arrested at his home without a warrant. *Harris*, 495 U.S. at 15–16. The defendant

was then taken to a station house where he gave an incriminating statement. *Id.* In refusing to exclude the evidence, the Court noted that the defendant's statement was "the product of an arrest and being in custody," but was nevertheless "not the fruit of the fact that the arrest was made in the house rather than someplace else." *Id.* The same is true here—even if one accepts that the seizure in question was unreasonable, the evidence obtained was merely the product of the *Terry* stop, not the *manner* in which it was carried out.

Finally, while not binding, other courts that have encountered this topic have found similarly. *See United States v. Anker*, 502 F.3d 829, 836–37 (9th Cir. 2007) (holding that, while excessive force can render a search or seizure unreasonable, there must be a sufficient causal nexus between the violation and the discovery of the evidence in question to invoke the exclusionary rule); *United States v. Watson*, 558 F.3d 702, 704–05 (7th Cir. 2009) (holding that the proper remedy for alleged excessive force is a § 1983 suit rather than exclusion, particularly where "[t]here was no causal connection . . . between the alleged police misconduct and the obtaining of the evidence that the defendant" sought to suppress); *United States v. Garcia-Hernandez*, 659 F.3d 108, 114 (1st Cir. 2011) ("It is common ground that courts can review a claim of excessive force to determine if the police acted reasonably in carrying out a search [or seizure] and, thus, violated a defendant's Fourth Amendment rights . . . . But even if the police infringe the Fourth Amendment this way, 'the fruits of th[at] search are not subject to suppression.'").

**C. Suppression of the Firearm Would Not Further the Interests Underlying the Fourth Amendment**

Rounding out the analysis, suppressing evidence of the firearm would not further the underlying Fourth Amendment protections at issue. The discovery of the weapon was not derived from nor related to the allegedly excessive use of force, and as such, suppression of the weapon would not deter any such conduct. Instead, if the Defendant maintains that Officer Walker used

excessive force in apprehending him, he "has an adequate remedy by way of a civil action—a remedy better calibrated to the actual harm done the defendant than the exclusionary rule would be." *Watson*, 558 F.3d 702.  In such a case, "a jury will assess the damages that are required to compensate him and deter the police" from any such future misconduct.  *Id.*

## V.  CONCLUSION

For the reasons stated above, the Court finds that evidence of the firearm should not be suppressed pursuant to the exclusionary rule, because there is no causal nexus between any alleged police misconduct and the discovery of the firearm.

An appropriate Order denying the Motion to Suppress shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: September 13, 2023